FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2006 SEP 21 P 4: 40

CLERK _____
SO. DIST. OF GA.

SOUTHEAST LANDCO, LLC,  :  CIVIL ACTION

    Plaintiff,  :

        v.  :

150 BEACHVIEW HOLDINGS, LLC,  :

    Defendant.  :  NO. CV206-177

## O R D E R

Plaintiff, Southeast LandCo, LLC, filed the above-captioned case against Defendant, 150 Beachview Holdings, LLC, alleging breach of a real estate contract.

Presently before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction. Because the action is not related to a pending bankruptcy matter, the motion will be **GRANTED**.

## BACKGROUND

According to Plaintiff, on February 27, 2006, Defendant purchased a note and security deed from SunTrust Bank, relating to a lease of certain nonresidential real estate located at 150 Beachview Drive, Jekyll Island, Georgia. The debtor on the note, William W. Forehand, defaulted on his payment obligations thereunder.[1] Consequently, Defendant published notice of a foreclosure sale, to be held at the Glynn County Courthouse during the legal hours of sale, beginning at 10:00 A.M. on August 1, 2006.

Plaintiff's representative, Keith Sebade, and Plaintiff's attorneys, Charles Byrd, M. F. Martin, III, and J. T. Johnson, went to the courthouse before 10:00 A.M. on the appointed day to bid at the auction. Plaintiff avers that Defendant's representatives, Rick Patton and Michael Shaw, did not announce any "ground rules," nor the terms of payment, prior to beginning the auction. Shaw began the auction at 10:39 A.M. Plaintiff and Defendant placed alternating bids, and Plaintiff was the final bidder at a price of 3.9 million dollars.

---

[1] In addition to Forehand, Debi Fry, and others, also held an interest in the leasehold.

AO 72A
(Rev. 8/82)

At the conclusion of the auction, Shaw filled out a form listing the details of the sale, with input from Sebade. Shaw told Martin that Defendant wanted payment by means of a bank-certified check. Shaw agreed to come to the law offices of Martin and Johnson, located two or three blocks away, in a few minutes to pick up the check. One of the tenants of the property gave Sebade keys to the property at this time.

After Martin and Johnson left to secure payment, Shaw told Byrd that he had been instructed to re-auction the property because Southeast LandCo did not have cash tender available immediately at the close of the auction. Shaw then stated that Martin and Johnson had ten minutes to get back to the courthouse with the funds, or the property would be re-auctioned. Byrd called Martin to inform him of the Defendant's decision, and asked Martin and Johnson to come to the courthouse with the check as soon as possible.

Thereafter, Shaw began the auction again, but Byrd refused to participate because he contended that the re-auctioning of the property was in breach of the parties' contract. Defendant made the only bid, at 3 million dollars, during the second auction. As the second auction ended, Martin and Johnson drove up to the courthouse with the certified

3

check. Byrd told Shaw that the funds were on the premises. Sebade then ran after Patton and Shaw with the certified check, but Patton and Shaw got into their automobile, and fled from the premises.

Initially, Plaintiff asserted that the Court had diversity jurisdiction over the case. On August 14, 2006, the Court entered a temporary restraining order, enjoining Defendant from selling or otherwise encumbering the property. On August 17, 2006, Plaintiff conceded that the Court lacked jurisdiction over the case pursuant to 28 U.S.C. § 1332, and amended its complaint to allege federal question jurisdiction pursuant to 28 U.S.C. § 1334. On August 29, 2006, the Court heard oral argument on Defendant's motion to dismiss for lack of subject matter jurisdiction.

## SUBJECT MATTER JURISDICTION AND THE GOVERNING LAW

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a claim because the court lacks jurisdiction over the subject matter. Such a motion may be raised at any time during the pendency of the action. Fed. R. Civ. P. 12(h)(3).

AO 72A
(Rev. 8/82)

The Court has federal question jurisdiction over disputes that are related to bankruptcy matters. 28 U.S.C. § 1334(b) (2006 Supp.); 28 U.S.C. § 157 (1993). Congressional authorization of jurisdiction over controversies "related to" cases brought under Title 11 is broad, but it is not limitless. In re Lemco Gypsum, Inc., 910 F.2d 784, 787-89 (11th Cir. 1990). If the outcome of the litigation could have a conceivable effect on the estate being administered in bankruptcy, jurisdiction is satisfied. Id. at 788.

**DISCUSSION**

A bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (2004). The leasehold at issue here was for a fifty year term, between Forehand, Fry, and others, as lessees, and the Jekyll Island Authority (the "JIA"), as lessor. Such a lease is an "estate for years" under Georgia law, which passes as real property. Ga. Code. Ann. § 44-6-100 (1991).

Fry has filed a petition for bankruptcy, which is pending before Bankruptcy Judge John S. Dalis. In re: Debi F. Fry, 03-20394-JSD. As a result, at the time Fry's bankruptcy petition

5

was filed, the trustee had control over Fry's interest in the leasehold, and the JIA held a reversionary interest in the land. Ga. Code Ann. § 44-6-60 (1991).

Plaintiff argues that the Court has jurisdiction under § 1334 because, if it prevails in this litigation, Fry's estate will be enriched, and her creditors will receive the surplus proceeds that result from the additional $900,000 that it bid for the lease at the initial auction.[2] Defendant rejoins that the Court does not have federal question jurisdiction over this dispute because the leasehold has been rejected by operation of law in Fry's bankruptcy case. As a result, Defendant contends, the property is no longer part of her bankruptcy estate.

In sum, the parties concede that the lease has been rejected as a matter of law, 11 U.S.C. § 365(d)(4) (2004), but disagree about the import of that fact as it relates to the Court's power to decide the instant matter.

Plaintiff posits that the lease remained part of Fry's bankruptcy estate because it was neither abandoned nor terminated. 11 U.S.C. § 541(b)(2) (2004). While the lease has

---

[2]    Moreover, on February 6, 2004, interim Trustee R. Michael Souther filed a report of no distribution with respect to Fry's estate. On August 11, 2006, Souther withdrew the trustee's report of no distribution.

been rejected, it has not been terminated by operation of law. <u>Matter of Austin Dev. Co.</u>, 19 F.3d 1077, 1082 (5th Cir. 1994).

Further, Plaintiff maintains that termination under the terms of the lease agreement requires the JIA to give Fry, or the Trustee, notice of termination, which has not occurred. Plaintiff asserts that, although the Trustee's rejection of Fry's lease constituted a breach of the lease, that was not sufficient to terminate the property agreement. 11 U.S.C. § 365(g) (2004). In contrast to Fry, the JIA did give notices of termination to others who had an interest in the leasehold.[3]

As far as the trustee and the bankruptcy estate are concerned, though, the decision to assume or reject a lease must be made with care. "[O]nce a contract is rejected, it stays rejected. This view [is] supported by the wording of section 1123(b)(2) and section 1322(b)(7), which permit the assumption or rejection in the plan of contracts 'not previously rejected.'" 3 Lawrence P. King, Collier on Bankruptcy § 365.09, at 365-77 (15th ed. rev. 2000).

---

[3] Moreover, Plaintiff contends that the property was not abandoned under 11 U.S.C. § 554, because the Trustee did not notify all creditors of an intent to abandon the leasehold, the bankruptcy court did not order the trustee to abandon the property, and the estate has not been fully administered.

AO 72A
(Rev. 8/82)

Thus, as Defendant notes, rejection of a lease amounts to a termination or abandonment of the trustee's, or the estate's, interest in the leasehold. Rejection of the lease removes it from bankruptcy administration, and the rejected lease is no longer part of the bankruptcy estate. "Section 365 enables the bankruptcy trustee to affirm or reject leases and executory contracts, and is based on the trustee's long-standing power to abandon obligations burdensome to the estate." In re Martin Bros. Toolmakers, Inc., 796 F.2d 1435, 1439 (11th Cir. 1996); In re Reed, 94 B.R. 48, 52 (Bankr. E.D. Pa. 1988); In re Onecast Media, Inc., 439 F.3d 558, 563 (9th Cir. 2006).

Indeed, the Trustee recognized as much when the list of assets in the report of no distribution did not contain the leasehold interest. Likewise, Bankruptcy Judge Lamar W. Davis, Jr., granted relief from the automatic stay pursuant to 11 U.S.C. § 362(c)(1). Because the lease was deemed rejected, it was no longer property of the estate, and the stay could be lifted. Dkt. No. 20, Ex. A. See In re Williams, 171 B.R. 420, 421-23 (Bankr. S.D. Ga. 1994).

It follows that a dispute between two non-debtor parties, over rights pertaining to the lease, is not "related to" the bankruptcy case of Debi Fry. Matter of Austin Dev. Co., 19

AO 72A
(Rev. 8/82)

F.3d at 1084.  Any additional proceeds recognized by the sale of the leasehold would not benefit the bankruptcy estate.

That does not necessarily mean that the <u>debtor's</u> interest in the lease is terminated by the trustee's technical breach of the agreement, see 11 U.S.C. § 365(g) (2004), especially where the debtor continues to pay rent after filing the bankruptcy petition.  <u>In re Park</u>, 275 B.R. 253, 255-59 (Bankr. E.D. Va. 2002);[4] <u>In re Garfinkle</u>, 577 F.2d 901, 904 (5th Cir. 1978);[5] <u>Matter of Austin Dev. Co.</u>, 19 F.3d at 1081-84; <u>In re Miller</u>, 282 F.3d 874, 877-78 (6th Cir. 2002); <u>In re Zip Enterprises, Inc.</u>, 28 B.R. 223, 225 (Bankr. M.D. Ala. 1983).

Nonetheless, the Court does not have jurisdiction merely because the <u>lease</u> has not been terminated, and Fry might have some conceivable interest in it.  Rather, because the rejected lease is no longer part of Fry's bankruptcy estate, the foreclosure proceeds would not be applied to benefit her

---

[4] "That the <u>trustee</u> has no further interest in the lease is plain.  The question is, what interest do the <u>debtors</u> have?"  <u>Id.</u> at 256.

[5] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

AO 72A
(Rev. 8/82)

creditors.  Therefore, the litigation <u>sub judice</u> is not related to Fry's bankruptcy case.

## CONCLUSION

For the reasons explained above, Defendant's motion to dismiss is **GRANTED**.  Dkt. No. 19.

**SO ORDERED**, this _____20_____ day of September, 2006.


_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)